**E-FILED**
Tuesday, 29 March, 2016  11:05:57 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| DANIEL PROCTOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14-1228 |
| | ) | |
| KUL SOOD, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## SUMMARY JUDGMENT OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se and presently incarcerated at Big Muddy Correctional Center, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging deliberate indifference to a serious medical need related to medical treatment he received while incarcerated at Hill Correctional Center.  The matter comes before this Court for ruling on the Defendants' Motions for Summary Judgment.  (Docs. 45, 49).  The motions are granted.

## PRELIMINARY MATTERS

Plaintiff filed two motions seeking to supplement his response to the Defendants' motions for summary judgment.  (Docs. 63, 65).  Plaintiff seeks to include evidence from medical tests he received in

September 2015.  Plaintiff's motions are granted.  The Court will consider the evidence to the extent that such evidence is relevant to the allegations in this lawsuit.

In addition, Plaintiff requests in his response to the Defendants' motion for summary judgment that the Court grant Arthur Funk's request to be dismissed from this lawsuit.  (Doc. 55 at 4, ¶ 1).  The Court construes this as a motion to dismiss Defendant Funk.  The motion is granted.  Defendant Funk is dismissed from this lawsuit, and the Court will not discuss the allegations against him in this ruling.

Plaintiff also filed a Motion to Request Counsel after he filed a response to the Defendants' motions for summary judgment.  (Doc. 62).  Plaintiff has no constitutional or statutory right to counsel in this case.  In considering the Plaintiff's motion, the court asks: (1) has the indigent Plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?  Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007) (citing Farmer v. Haas, 990 F.2d 319, 322 (7th Cir.1993)).  Plaintiff has shown that he made a reasonable attempt to secure

counsel on his own.  Plaintiff, however, was able to adequately describe his medical conditions and cites relevant facts and case law in his filings with the Court.  Therefore, the Court finds that Plaintiff is capable of representing himself at this time.  Plaintiff's motion is denied.

To the extent that Plaintiff seeks leave to proceed in forma pauperis in his motion to request counsel, his motion is denied as moot.  Plaintiff's petition to proceed in forma pauperis was previously granted.  See Text Order entered June 10, 2014.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor.  Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010).  The party moving for summary judgment must show the lack of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## FACTS

At all times relevant, Plaintiff was incarcerated at Hill Correctional Center ("Hill").  Plaintiff brought this action against two distinct sets of defendants—those medical professionals at Hill responsible for treating his medical conditions ("Medical Defendants") and nonmedical personnel responsible for prison administration ("Administrative Defendants").

The Medical Defendants are as follows: Defendant Sood and Defendant Schute were physicians at Hill; Defendant John was a physician's assistant; Defendant Bloomfield was a nurse practitioner; and, Defendant Wexford is a corporation contracted to provide medical services at the prison.

The Administrative Defendants are as follows:  Defendant Godinez was the Director of the Illinois Department of Corrections ("IDOC"); Defendant Akpore was the Warden at Hill; Defendant

Mathes (also known as Lindorff) was the Health Care Unit
Administrator; and Defendant Shicker was the IDOC Medical
Director.

Plaintiff's complaints of abdominal pain to Hill's medical staff
began in late 2007.  Plaintiff reported that he had been experiencing
intermittent pain on the left side of his abdomen since 1999.
Plaintiff described the location of the pain as on his left side, just
below his belly button.  Pl.'s Dep. 43:14-22.  In medical terms, this
area is described as the lower left quadrant (abbreviated "LLQ").
See, e.g. (Doc. 45-9 at 2).  X-rays and an ultrasound taken in 2007
at Plaintiff's prior place of incarceration were normal.

From November 2005 through June 2014, medical staff
physically examined Plaintiff's abdomen more than 30 times.  The
results of these examinations showed that no masses or organ
irregularities were present in Plaintiff's abdomen and, except for one
occasion in December 2010, Plaintiff's bowel sounds were normal.
See (Docs. 45-7 at 16-18; 45-8 at 1, 3, 8, 13; 45-10 at 2, 13-14; 45-
11 at 1, 4-5, 8; 45-38 at 5, 7-8, 10, 13; 45-39 at 1, 7,11,15; 45-40
at 1, 5-6, 11, 15; 45-41 at 2-5, 9-10, 13-14, 16; 45-42 at 1, 3, 5).
The examinations also reveal that Plaintiff experienced intermittent

LLQ pain and tenderness.  The pain and tenderness was described as nonexistent to mild.  In the spring of 2014, Plaintiff told medical staff that the pain had become constant.  According to Plaintiff's handwritten log, Plaintiff's pain was consistently mild.  (Doc. 55-11 at 12).  Plaintiff also reported alternating bouts of constipation and diarrhea.  The Medical Defendants consistently diagnosed Plaintiff with Irritable Bowel Syndrome ("IBS") and spastic colon.

The Medical Defendants each treated Plaintiff for this condition at various points during the relevant time period.  Defendant Schute provided treatment from January 2008 through October 2009.  Defendant Schute diagnosed Plaintiff with a spastic colon and IBS after examining Plaintiff's abdomen and reviewing Plaintiff's 2007 x-rays and ultrasound results.  Defendant Schute ordered a continuation of Plaintiff's anti-spasmotic medication (Bentyl) and lab work.  Defendant Schute also discontinued a cholesterol medication that could cause gastrointestinal side effects and advised Plaintiff to exercise regularly and monitor his carbohydrate intake.

Plaintiff was provided medical care for several unrelated issues thereafter, but he did not complain about abdominal pain again

until approximately 19 months later.  On October 6, 2009, Defendant Schute renewed the prescriptions for Plaintiff's medications, including Bentyl, pursuant to a chart review. Defendant Schute did not examine Plaintiff at that time.

Defendant John provided medical care to Plaintiff from September 2009 through July 2011.  The medical records disclose that Defendant John treated Plaintiff's abdominal pain with anti-spasmotic medication (first Bentyl, then Levsin) and recommended that Plaintiff avoid certain foods.  In June 2010, Defendant John ordered complete blood work (to rule out possible inflammation, problems with the thyroid gland, Celiac's disease, and problems with the pancreas and pancreatic function), stool testing to check for blood in the stool, infections in the digestive tract, and parasites, and an x-ray.  The results were within normal limits.  Other than showing an increase in stool in Plaintiff's colon, the x-rays were unremarkable and unchanged from the 2007 x-rays.

From July 2010 through September 2010, Plaintiff's condition improved with the change in medication from Bentyl to Levsin and avoidance of certain foods and caffeine.  Defendant John scheduled several follow-up appointments to monitor Plaintiff's condition.  The

medical records disclose that Plaintiff reported an improvement in his condition—the medication helped, but it did not completely eliminate the pain.  <u>See</u> (Docs. 45-11 at 1-5).  Nonetheless, Plaintiff stated he no longer experienced constipation and the diarrhea and cramping occurred once per week or less as compared to three or four times weekly before he received treatment.  <u>Id.</u> at 5.

In December 2010, Defendant John renewed Plaintiff's prescription for Levsin after Plaintiff reported it helped his condition.  (Doc. 45-38 at 10).  Defendant John examined Plaintiff one other time in July 2011 when Plaintiff reported occasional flare ups of his condition.  (Doc. 45-39 at 8-9).  Defendant John continued Plaintiff's Levsin prescription after Plaintiff reported that the medication helped his condition and advised Plaintiff to avoid aggravating factors, such as caffeine.  Plaintiff declined over-the-counter pain medication after stating the pain he experienced usually resolved in a few minutes.

Defendant Sood provided medical care to Plaintiff from March 2011 through September 2014.  During the first examination in March 2011, Defendant Sood prescribed Levsin and an antibiotic to treat possible diverticulitis (an infection in the digestive tract that

can cause pain or discomfort) and advised Plaintiff to avoid dairy and gluten, if possible. (Doc. 45-38 at 13). At the next examination in June 2011, Plaintiff reported that his condition had improved. (Doc. 45-39 at 4). Defendant Sood continued Plaintiff's then-current medications.

Thereafter, Defendant Sood examined Plaintiff on at least nine (9) occasions: 3 times in 2012 (January, May, December); once in 2013 (January); and, 5 times in 2014 (January, April, June, July, and September). Defendant Sood's physical examinations of Plaintiff during these visits were normal. Plaintiff's prescriptions were continued at a reduced dosage until December 2012, when Plaintiff experienced a rare side effect from Levsin.[1] Defendant Sood then discontinued Levsin and prescribed Bentyl to treat Plaintiff's spastic colon. Defendant Sood also ordered lab work in December 2012 to rule out diverticulitis. The lab results were within normal limits.

---

[1] Plaintiff testified that Levsin was discontinued because he experienced a rare side effect of the medication: "I was getting pains in my eye. And they put me back on Bentyl once I explained that to the doctors....[T]here's a rare side effect that [Levsin] can cause pain in someone's eye....But now, I don't have that problem." Pl.'s Dep. 74:3-12.

Plaintiff reported reduced pain in January 2013 at what turned out to be Defendant Sood's sole examination of Plaintiff during that year.  (Doc. 45-40 at 10-11).  Plaintiff's examination was normal, and Plaintiff reported reduced pain.  Defendant Sood ordered lab work, continued Plaintiff's Bentyl prescription, and also prescribed medication for gas relief.  Lab results were normal. Plaintiff saw the nurse practitioner for the remainder of the year.

In January 2014, Plaintiff reported left side abdominal pain and colon spasms.  Plaintiff reported that medication previously prescribed by the nurse practitioner had provided relief.  Defendant Sood continued Plaintiff's then-current medications.

In April 2014, Plaintiff reported that he felt better, but still experienced intermittent pain.  Defendant Sood's physical examination was normal, and Plaintiff was prescribed fiber tabs to assist with constipation.  Defendant Sood's examination in June 2014 was again normal, and Defendant Sood prescribed a fiber supplement.  Plaintiff reported no problems at Defendant Sood's final examination in September 2014.  (Doc. 45-42 at 8) ("Doc, I am doing fine.").

Defendant Bloomfield examined Plaintiff various times from November 2006 through December 2007 and again between May 2013 and March 2014.  In between those two time periods, Defendant Bloomfield was employed on an "as needed" basis or not employed at all at Hill.  During Defendant Bloomfield's examinations, Plaintiff reported LLQ abdominal pain.  In 2007, Defendant Bloomfield ordered x-rays and an ultrasound, testing for blood in Plaintiff's stool and an h. pylori (bacteria that can cause gastrointestinal discomfort) test.  Plaintiff tested positive for h. pylori, but the infection was resolved following a course of antibiotics and acid blockers.  During 2006 and 2007, Plaintiff was also under the care of physicians who prescribed Bentyl and other medications.

During the 2013-2014 time period, Defendant Bloomfield examined Plaintiff for complaints of abdominal pain.  Defendant Bloomfield continued those medications previously prescribed by the physicians at Hill, and she also prescribed Plaintiff medications to relieve symptoms of constipation.  Plaintiff reported that the constipation medication provided some relief.  Defendant Bloomfield last examined Plaintiff in March 2014.  According to the records,

Plaintiff reported daily LLQ abdominal pain.  Defendant Bloomfield prescribed a fiber supplement and scheduled Plaintiff for an appointment with Defendant Sood.

The Administrative Defendants had no personal involvement in the medical care provided to Plaintiff throughout the relevant time period.  Plaintiff testified in his deposition that these defendants violated his constitutional rights by not making a recommendation for him to see an outside specialist for his abdominal pain.  Pl.'s Dep. pp. 101-114.

## ANALYSIS

### Medical Defendants

To prevail on an Eighth Amendment claim for inadequate medical care, the Plaintiff must show that the prison official acted with deliberate indifference to a serious medical need.  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  Deliberate indifference is more than negligence, but does not require the plaintiff to show that the defendants intended to cause harm.  Mayoral v. Sheehan, 245 F.3d 934, 938 (7th Cir. 2001).  Liability attaches under the Eighth Amendment when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The record shows that Plaintiff's medical condition required ongoing medical treatment, and, therefore, the Court finds that a reasonable juror could conclude that Plaintiff suffers from an objectively serious medical need. See King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012) ("An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." (internal quotations omitted)).

Claims against medical professionals for inadequate medical care are analyzed under a professional discretion standard. Under this standard, treatment decisions made by these professionals are a matter of professional discretion with which the courts will not interfere unless the evidence suggests that "'no minimally competent professional would have so responded under those circumstances.'" Sain v. Wood, 512 F.3d 886, 894-95 (7th Cir. 2008) (quoting Collignon v. Milwaukee Cnty., 163 F.3d 982, 988 (7th

Cir. 1998)).  In other words, a medical professional is deliberately
indifferent only if "the decision by the professional is such a
substantial departure from accepted professional judgment,
practice, or standards, as to demonstrate that the person
responsible actually did not base the decision on such a judgment."
Id. (quoting same).  Within these bounds, a prison medical
professional "is free to make his own, independent medical
determination as to the necessity of certain treatments or
medications," and deference to a prior doctor's diagnosis is not
required to satisfy the requirements of the Eighth Amendment.
Holloway v. Delaware Cnty. Sheriff, 700 F.3d 1063, 1074 (7th Cir.
2012).

    Plaintiff does not allege that he was denied access to medical
care.  Instead, Plaintiff asserts that the Medical Defendants should
have ordered a colonoscopy and referred him to an outside medical
specialist to determine the definitive source of Plaintiff's abdominal
pain.  Insofar as Plaintiff disagrees with any medical treatment he
was provided, he cannot prevail—a mere disagreement with the
course of treatment, standing alone, is not sufficient to attach

constitutional liability.  Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996).

Nor does the Constitution necessarily require a referral to a specialist or specific diagnostic tests.  "Like other medical decisions, the choice whether to refer a prisoner to a specialist involves the exercise of medical discretion, and so refusal to refer supports a claim of deliberate indifference only if that choice is 'blatantly inappropriate.'"  Pyles v. Fahim, 771 F.3d 403, 411 (7th Cir. 2014) (citing Roe v. Elyea, 631 F.3d 843, 858 (7th Cir. 2011)).  In the same vein, diagnostic testing is a "classic example of a matter for medical judgment."  Id. (citing Estelle, 429 U.S. at 107 (internal quotations omitted)).  The relevant inquiry is whether a treating physician knew about a need for specialized expertise, or whether such need would have been obvious to a lay person.  Id. at 412.

Prior to his arrival at Hill, Plaintiff had been complaining of intermittent abdominal pain since 1999.  When he continued to experience these pains and reported it to the medical staff at Hill, the Medical Defendants reviewed Plaintiff's medical history, x-rays, and ultrasound before opting for a conservative course of treatment through anti-spasmotic medications and advice regarding diet and

exercise.  This treatment was not ineffective—Plaintiff reported improvement in his condition on several occasions to multiple Defendants over the relevant time period, and he went long stretches of time without complaint about this particular ailment. Even when Plaintiff complained of constant pain, the pain was mild, and eventually dissipated with treatment.

Plaintiff's main complaint is with the Defendants' use of the word "possible" when diagnosing him with IBS.  According to Plaintiff, the Medical Defendants should have confirmed his diagnosis through a colonoscopy or referral because IBS has symptoms similar to other, more serious conditions like Crohn's Disease and Stomach Cancer.  <u>See</u> Pl.'s Dep. 54:24-55:8. Nevertheless, Plaintiff does not allege he suffered from, and the medical records do not disclose, other symptoms indicative of Crohn's Disease[2] and Stomach Cancer.[3]  For example, there is no

---

[2] Symptoms of Crohn's Disease include: diarrhea, fever, fatigue, abdominal pain and cramping, blood in your stool, mouth sores, reduced appetite and weight loss, perianal disease.  *See* Mayo Clinic, Overview of Crohn's Disease, available at: http://www.mayoclinic.org/diseases-conditions/crohns-disease/basics/symptoms/con-20032061 (last accessed March 23, 2016).  For authority for searching the internet for information, see *Rowe v. Gibson*, 798 F.3d 622 (7th Cir. 2015).

[3] Symptoms of stomach cancer: fatigue, feeling bloated after eating, feeling full after eating small amounts of food, heartburn that is severe and persistent,

indication Plaintiff experienced fatigue, blood in his stool, reduced appetite, or persistent nausea and vomiting.  Plaintiff also testified that he did not experience significant unintentional weight loss. Pl.'s Dep. 9:4-12:8 (Plaintiff reduced his food intake prior to arriving at Hill because he wanted to lose weight, and he subsequently lost approximately 40 pounds over a long period of time).

The evidence Plaintiff provided in his motion to supplement is not persuasive.  The findings of Plaintiff's colonoscopy in September 2015 were normal, and the hernias (umbilical and inguinal) were not located in the LLQ abdominal area where Plaintiff complained of pain.  (Doc. 65-1).

Plaintiff has not produced any evidence to suggest that the Medical Defendants were aware of a need for specialized medical knowledge or a specific medical test or that the need actually existed.  Therefore, the Court finds that no reasonable juror could conclude that the Medical Defendants were deliberately indifferent. As there is no underlying constitutional violation, Defendant

---

indigestion that is severe and unrelenting, nausea that is persistent and unexplained, stomach pain, persistent vomiting, unintentional weight loss.  *See* Mayo Clinic, Overview of Stomach Cancer, available at: http://www.mayoclinic.org/diseases-conditions/stomach-cancer/basics/symptoms/con-20038197 (last accessed March 23, 2016).

Wexford may not be held liable as a corporation.  See Pyles, 771
F.3d at 412 (citing City of Los Angeles v. Heller, 475 U.S. 796, 799
(1975)).

## Administrative Defendants

Plaintiff alleges that Defendants Godinez, Akpore, Shicker, and
Mathes (a/k/a Lindorff) should have recommended that Plaintiff be
referred to an outside specialist following the grievances and letters
he wrote on the issue.

Plaintiff cannot rely solely on the supervisory authority of
these officials to impose constitutional liability.  "Section 1983
creates a cause of action based on personal liability and predicated
upon fault; thus, liability does not attach unless the individual
defendant caused or participated in a constitutional deprivation."
Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996) (citations omitted).
To be held liable, a government supervisor "must know about the
conduct and facilitate it, approve it, condone it, or turn a blind
eye...."  Vance, 97 F.3d at 993 (quoting Gentry v. Duckworth, 65
F.3d 555, 561 (7th Cir. 1995)).

Assuming these Defendants had knowledge of Plaintiff's
medical condition, these Defendants were entitled to rely upon the

professional judgment of medical staff.  Nonmedical prison officials are generally not held constitutionally liable in cases where the official deferred to the judgment of the medical staff.  See Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010) (nonmedical prison officials "are entitled to defer to the judgment of jail health professionals" so long as the inmate's complaints are not ignored (citations omitted)); Hayes v. Snyder, 546 F.3d 516, 527 (7th Cir. 2008) (no deliberate indifference where nonmedical prison official investigated inmate's complaints and referred then to medical providers who could be expected to address the concerns); Greeno v. Daley, 414 F.3d 645, 656 (7th Cir. 2005) (no deliberate indifference where nonmedical prison official referred inmate complaints to medical providers).  As the court in Greeno explained:

> If a prisoner is under the care of medical experts … a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

Greeno, 414 F.3d at 656 (quoting Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)).  In other words, "the law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so."  Berry, 604 F.3d at 440.

As discussed above, Plaintiff's requests for medical care were not ignored by the Medical Defendants.  Plaintiff provided copies of several grievances he filed related to his medical issues.  See (Docs. 55-10 at 14-20; 55-11 at 8-19).  Notations on the grievances indicate that nonmedical personnel referred Plaintiff's grievances to Defendant Mathes (Lindorff), the Health Care Administrator. Defendant Mathes responded to the grievances.

In addition, the medical records contain several notations indicating that medical personnel responded to Defendant Mathes' requests for information regarding Plaintiff's treatment.  See (Docs. 45-40 at 6; 45-41 at 14; 45-42 at 2).

The record shows that the nonmedical personnel consistently investigated Plaintiff's complaints regarding his medical care, and Plaintiff has not provided any evidence to the contrary.  Therefore,

the Court finds that no reasonable juror could conclude that the Administrative Defendants were deliberately indifferent.

**IT IS THEREFORE ORDERED:**

    **1) Plaintiff's Motions Seeking to Supplement his response to the Defendants' motions for summary judgment [63][65] are GRANTED.  Plaintiff's Motion to Request Counsel [62] is DENIED as to all relief requested.**

    **2) Defendants' Motions for Summary Judgment [45][49] are GRANTED.  The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff.  All pending motions not addressed in this Opinion are denied as moot, and this case is terminated, with the parties to bear their own costs.  Plaintiff remains responsible for the $350.00 filing fee.**

    **3) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment.  FED. R. APP. P. 4(a)(4).  A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. See**

**FED. R. APP. P. 24(a)(1)(c); <u>see also</u> <u>Celske v Edwards</u>, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); <u>Walker v. O'Brien</u>, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose...has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

ENTERED:       March 29, 2016.

FOR THE COURT:


_____
    *s/ Sue E. Myerscough*
    SUE E. MYERSCOUGH
    UNITED STATES DISTRICT JUDGE